# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| DATACORE SOFTWARE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SCALE COMPUTING, INC.,<br><br>Defendant. | Civil Action No. 22-535-GBW |

Eathan Townsend, MCDERMOTT WILL & EMERY LLP, Wilmington, DE; A. Shane Nichols, MCDERMOTT WILL & EMERY LLP, Alanta, GA; Jodi Benassi, MCDERMOTT WILL & EMERY LLP, San Fransisco, CA; Thomas M. DaMario, MCDERMOTT WILL & EMERY LLP, Chicago, IL; Ceclia Choy, MCDERMOTT WILL & EMERY LLP, Menlo Park, CA

> *Counsel for Plaintiff*

David E. Moore, Bindu A. Palapura, Andrew M. Moshos, POTTER ANDERSON & CORROON LLP, Wilmington, DE; James C. Yoon, Matthew R. Reed, Alexander Miller, WILSON SONSINI GOODRICH & ROSATI, P.C., Palo Alto, CA; Talin Gordnia, WILSON SONSINI GOODRICH & ROSATI, P.C., Los Angeles, CA

> *Counsel for Defendant*

## MEMORANDUM OPINION

June 21, 2024
Wilmington, Delaware

_____
GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court are Defendant Scale Computing Inc.'s ("Scale") Motions for Summary Judgment (D.I. 158, D.I. 159, D.I. 161).[1]  Plaintiff DataCore Software Corporation ("DataCore") alleges that Scale infringes United States Patent No. 9,344,235 ("the '235 patent"). D.I. 1.  The '235 patent generally relates to a method and apparatus for allocating physical storage resources for virtual machines on a system network. *See generally* '235 patent at 1:54-2:4.  During the claim construction stage of the case, Scale argued that "intentionally exceeds" is indefinite or, if that term is not indefinite, DataCore disclaimed systems that allow for the sum of the logical sizes for the virtual volumes to exceed the total logical size of the assigned physical storage devices.  The Court chose to "defer ruling on whether 'intentionally exceeds' is indefinite until the case dispositive motion stage." D.I. 76 at 13.  The Court noted that it "will benefit from a more robust evidentiary record on this issue, including, for example, transcripts of expert depositions … and expert reports." *Id.*  Now, at the case dispositive stage, Scale argues in its first and second-ranked summary judgment motions that "intentionally exceeds" is indefinite or, if that term is not indefinite, that it does not infringe under any appropriate construction of the term.

## I.   LEGAL STANDARD

### A.   Claim Construction

"'[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citation omitted); *Aventis Pharms. Inc. v. Amino Chemicals Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013)

---

[1] Also pending before the Court are the parties' Daubert motions, and DataCore's Motion to Strike.  The Court will issue a timely ruling on those motions at a later date.

(same). "[T]here is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324. The Court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.* The ultimate question of the proper construction of a patent is a question of law, although "subsidiary factfinding is sometimes necessary." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326–27 (2015); *see Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996) ("the construction of a patent . . . is exclusively within the province of the court.").

"The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1313); *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016) (similar). The "'only two exceptions to this general rule'" are (1) when a patentee defines a term or (2) disavowal of "'the full scope of a claim term either in the specification or during prosecution.'" *Thorner*, 669 F.3d at 1365 (citation omitted).

The Court "'first look[s] to, and primarily rel[ies] on, the intrinsic evidence,'" which includes the claims, written description, and prosecution history and "'is usually dispositive.'" *Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1340 (Fed. Cir. 2020) (citation omitted). "[T]he specification ' . . . is the single best guide to the meaning of a disputed term.'" *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1340 (Fed. Cir. 2016) (citation omitted). "'[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess.' When the patentee acts as its own lexicographer, that definition governs." *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 796 (Fed. Cir. 2019) (quoting *Phillips*, 415 F.3d at 1316). However, "'[the Court] do[es] not read

limitations from the embodiments in the specification into the claims.'" *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1310 (Fed. Cir. 2017) (citation omitted)). The "written description . . . is not a substitute for, nor can it be used to rewrite, the chosen claim language." *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

The Court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370; *Cont'l Cirs.*, 915 F.3d at 796 (same). The prosecution history may "'demonstrat[e] how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution . . . ." *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1377 (Fed. Cir. 2021) (quoting *Phillips*, 415 F.3d at 1317).

The Court may "need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 574 U.S. at 331. "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980; *Phillips*, 415 F.3d at 1317 (same). Extrinsic evidence may be useful, but it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Cont'l Cirs.*, 915 F.3d at 799 (internal quotation marks and citations omitted). However, "[p]atent documents are written for persons familiar with the relevant field . . . . Thus resolution of any ambiguity arising from the claims and specification may be aided by extrinsic evidence of usage and meaning of a term in the context of the invention." *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1119 (Fed. Cir. 2002); *see Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 899 (2014) (explaining that patents are addressed "to those skilled in the relevant art").

**B.    Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine issue of material fact is one that could lead a reasonable jury to find in favor of the nonmoving party." *Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020) (citation omitted). "The court must review the record as a whole, draw all reasonable inferences in favor of the nonmoving party, and must not 'weigh the evidence or make credibility determinations.'" *Id.* (citation omitted).  The Court must enter summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [the non-moving] party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Celotex*, 477 U.S. at 322).  The Federal Circuit "reviews a district court's grant of summary judgment under the law of the regional circuit, here the Third Circuit." *Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069, 1075 (Fed. Cir. 2021) (citation omitted).

**II.    DISCUSSION**

**A.    The Court Finds That "Intentionally Exceeds" Is Not Indefinite.**

| Term No. | Claim Term | Plaintiffs' Construction | Defendant's Construction | Court's Construction |
|---|---|---|---|---|
| 1 | "Intentionally exceeds" | Plain and ordinary meaning, which is "designed specifically to exceed" | Indefinite<br><br>Alternative, if not found indefinite:<br><br>"Intentionally exceeds" requires more than capability of being able to handle "potential | Not indefinite.<br><br>Designed with the intent to exceed.<br><br>"Intentionally exceeds" requires more than the capability of being able to handle "potential |

5

| | | | happenstance of over-commitment" of resources. | happenstance of over-commitment" of resources. |
|---|---|---|---|---|

Scale contends that "intentionally exceeds" is indefinite because "[t]here is no reference in the specification to how or why the sum of the logical sizes for the virtual volumes intentionally exceeds the total logical size of the assigned physical storage devices." D.I. 49 at 18. Further, Scale argues that "intentionally exceeds" is indefinite because "it is not reasonably certain whose 'intent' is claimed and how to determine whether that individual acted with the requisite intent." Thus, "[b]ecause 'intentionally exceeds' does not identify the scope of the alleged invention in any manner, let alone in a sufficiently definite way to allow a [person of ordinary skill in the art] to be informed of its scope with 'reasonable certainty,'" Scale argues that the term is indefinite. *Id.* at 19 (citing *Interval Licensing LLC v. AOL, Inc.,* 766 F.3d 1364, 1374 (Fed. Cir. 2014)).

Alternatively, Scale argues that "intentionally exceeds" should be construed "as requiring more than the capability of being able to handle 'potential happenstance of over-commitment' of resources" based on DataCore's purported statements during the prosecution of the '235 patent. *Id.* at 19-20. Specifically, Scale argues that DataCore disclaimed systems that possess only a "potential happenstance" of overcommitment of resources or are "designed to allow" overcommitment to overcome prior art reference Reuter-207. D.I. 164 at 17-18. As a result, Scale contends that the scope of the claims "does not include situations where overprovisioning is allowed but not required." D.I. 208 at 11.

DataCore disagrees, arguing that, based on the intrinsic record, the term is readily understood with reasonably certainty to mean "designed specifically to exceed." D.I. 49 at 14 (citing D.I. 49, Ex. B). DataCore contends that a person of ordinary skill in the art would understand what is claimed because "the specification includes several descriptions of how 'the sum of the logical sizes for the virtual volumes intentionally exceeds the total logical size of the

6

assigned physical storage device.'" D.I. 197 at 7. Further, DataCore contends that it did not disclaim systems where it is merely possible to overcommit because its statements to the PTO were not a "clear and unmistakable surrender of subject matter." *Id.* at 14. DataCore explains that it amended its previous claims to "more clearly require[] features of the virtual volumes and corresponding relationship with the assigned storage devices" (i.e. that the "individual virtual volumes from the set of virtual volumes have respective logical sizes, and the sum of the logical sizes for the set of virtual volumes exceeds the total logical size of the assigned set of physical storage devices."). *See* D.I. 167, Ex. 13, DC00004397-98. DataCore also contends that it did not expressly disclaim claim scope by distinguishing Reuter-207, because DataCore argued to the PTO that Reuter-207 does not "allow or condone overcommitment." D.I. 197 at 13.

"A patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 901 (2014). To determine indefiniteness, courts examine "the patent record—the claims, specification, and prosecution history—to ascertain if they convey to one of skill in the art with reasonable certainty the scope of the invention claimed." *Teva Pharms. USA, Inc. v. Sandoz, Inc.,* 789 F.3d 1335, 1341 (Fed. Cir. 2015). While a "'potential infringer'" need not "be able to determine *ex ante* if a particular act infringes the claims," the patentee must "apprise the public 'of what is still open to them'" such that "a person of ordinary skill in the art could determine whether or not an accused product or method infringes the claim." *Niazi Licensing Corp. v. St. Jude Med. SC, Inc.,* 30 F.4th 1339, 1346-47 (Fed. Cir. 2022) (citations omitted) (internal quotations omitted). The challenger must "prov[e] indefiniteness by clear and convincing evidence." *BASF Corp. v. Johnson Matthey Inc.,* 875 F.3d 1360, 1365 (Fed. Cir. 2017). Like claim construction, definiteness

is a question of law, but the Court must sometimes render factual findings based on extrinsic evidence to resolve the issue of definiteness. *See Sonix Tech. Co. v. Publications Int'l. Ltd.,* 844 F.3d 1370, 1376 (Fed. Cir. 2017). "[A]ny fact critical to a holding on indefiniteness must be proven by the challenger by clear and convincing evidence." *One-E-Way, Inc. v. Int'l Trade Comm 'n,* 859 F.3d 1059, 1062 (Fed. Cir. 2017) (cleaned up).

The Court finds that "intentionally exceeds" is not indefinite, and construes the term as "Designed with the intent to exceed. 'Intentionally exceeds' requires more than the capability of being able to handle 'potential happenstance of over-commitment' of resources."

"Intentionally exceeds" is not defined in the specification and appears only in the body of the claims. Accordingly, the Court looks to the prosecution history. The original claims 1 and 2 of the '235 patent that DataCore submitted to the PTO recited "the total logical size of the assigned physical storage is allowed to be less than the logical size of the storage pool" and "presenting the virtual volume to a first client device as a storage device having the logical size of the storage pool even where the total logical size of the assigned physical storage is less than the logical size of the storage pool." D.I. 164, Ex. 13 at DC00004313 (method claim); *id.* at DC00004328-4329 (apparatus claim). The Examiner determined that the "is allowed to be less than" limitation was "simply a clause that shows an outcome" and that "any language that suggests or makes optional but does not require steps to be performed or does not limit a claim to a particular structure does not limit the scope of a claim or claim limitation." *Id.* at DC00004366. The Examiner also noted that the "even where" claim language is of no consequence because "[i]t doesn't matter if the physical storage is less than the logical size of the storage pool. It [i.e., presenting the virtual volumes ...]" still occurs without it." *Id.* at DC00004367.

8

To overcome that rejection, DataCore amended the claims to read "the sum of the logical sizes for the set of virtual volumes exceeds the total logical size of the assigned set of physical storage devices." *Id.* at DC00004376 (method claim); *id.* at DC00004380 (apparatus claim). DataCore argued its amended claims "more clearly requires features of the virtual volumes and corresponding relationship with the assigned physical storage devices." *Id.* at DC00004397. The examiner rejected those claims over Reuter-207, however, because Reuter-207 disclosed a system where "the sum of the capacity of the virtual disks exceeds the capacity of the physical storage pool, therefore the sum of the logical sizes of the set of virtual disks for a storage pool exceeds the logical size of the assigned physical storage devices." *Id.* at DC00004410-11. Specifically, the examiner explained that:

> Reuter-207 clearly disclosed each virtual disk having a committed capacity, which is the amount of capacity promised to the host of the virtual disk, the committed capacity is not guaranteed to be available when needed and that it is possible for the system to be 'over-committed', meaning the sum of the capacity of the virtual disks promised to the hosts is more than the system can possibly store, meaning the sum of the capacity of the virtual disks exceeds the capacity of the physical storage pool, therefore the sum of the logical sizes of the set of virtual disks for a storage pool exceeds the logical size of the assigned physical storage devices.

*Id.* at DC00004720. To overcome Reuter-207, DataCore further amended the claims to add the word "intentionally" ahead of "exceeds." *Id.* at DC00004750 (method claim); *id.* at DC00004754 (apparatus claim). DataCore explained that "[t]hese claimed features [of the amended claims] are not disclosed by Reuter-207" because "the only actually-described embodiment of Reuter-207 avoids overcommitment, and that the reference to this term was only with regard to an undesirable possibility in storage systems generally, there is clearly no embodiment or detail of any kind with regard to intentionally presenting virtual volumes in the fashion claimed by Applicant." *Id.* Thus, DataCore argued, the amended claims' recitation of "intentionally exceeds" "is clearly distinct

from a potential happenstance of overcommitment that might occur in prior art systems" such as Reuter-207. *Id.* at DC00004767.

The Court agrees with Scale that the prosecution history of claims 1 and 2 of the '235 patent establishes that "intentionally exceeds" requires more than the "potential happenstance of overcommitment." "Intentionally exceeds" must refer to something more than mere capability to overcommit, because DataCore acknowledged the "potential happenstance of overcommitment that might occur in prior art systems." D.I. 164, Ex. 13 at DC00004767. "Prosecution arguments like this one which draw distinctions between the patented invention and the prior art are useful for determining whether the patentee intended to surrender territory, since they indicate in the inventor's own words what the invention is not." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1330 (Fed. Cir. 2007). Further, the claimed system must do something more than "allow for" overcommitment because DataCore amended its claims that covered a system that was "allowed to be" overcommitted to recite that "the sum of the logical sizes for the virtual volumes intentionally exceeds the total logical size of the assigned physical storage device." D.I. 164, Ex. 13 at DC00004313 (method claim); *id.* at DC00004328-4329 (apparatus claim); *Advance Transformer Co. v. Levinson*, 837 F.2d 1081, 1083 (Fed. Cir. 1988) ("Positions taken in order to obtain allowance of an applicant's claims are pertinent to an understanding and interpretation of the claims that are granted by the PTO ... and may work an estoppel as against a subsequent different or broader interpretation."); *Medtronic, Inc. v. Guidant Corp.*, 465 F.3d 1360, 1373 (Fed.Cir.2006) ("A surrender can occur by argument as well as by amendment."). Accordingly, the Court finds that the construction of "intentionally exceeds" must include that "'intentionally exceeds' requires more than the capability of being able to handle 'potential happenstance of over-commitment' of resources."

Scale, however, argues that "intentionally exceeds" is indefinite even when construed in light of the prosecution history because a person of ordinary skill in the art would not know whose intent is claimed. D.I. 164 at 6-7. Specifically, Scale argues that "intentionally exceeds" could refer to either the intent of the designer or the intent of the system's user. *Id.* The Court disagrees. A person of ordinary skill in the art would understand that the claimed intent is the intent of the designer. DataCore distinguished Reuter-207 on the grounds that Reuter-207 taught away from overcommitment. Specifically, DataCore argued that "there is [] no description of allowing or condoning over-commitment of any kind in the actual embodiments described in the reference." D.I. 164, Ex. 13 at DC00004767-68. Thus, since DataCore distinguished its invention from the teachings of Reuter-207, Reuter-207 must be outside the scope of the claims. *Advance Transformer*, 837 F.2d at 1083. However, if the intent to exceed referred to the user's intent, the system in Reuter-207 would meet the "intentionally exceed" limitation if the user of that system intended to use it in an overcommitted state. Thus, as DataCore explained during the parties' hearing on Scale's motions for summary judgment, the intent to overcommit must "manifest through the systems operation itself, the way the system operates." Tr. at 51:9-51:13. Accordingly, a person of ordinary skill in the art would understand that the intent which is claimed in claims 1 and 2 of the '235 patent is the intent of the designer.

Thus, for the reasons stated above, the Court construes "intentionally exceeds" as "Designed with the intent to exceed. 'Intentionally exceeds' requires more than the capability of being able to handle 'potential happenstance of over-commitment' of resources."

11

**B.     The Court Finds That There Is A Genuine Dispute of Material Fact With Respect To Whether Scale Infringes Claims 1 And 2 Of The '235 Patent Under The Court's Construction Of "Intentionally Exceeds."**

Scale argues that it does not infringe under any construction of "intentionally exceeds" because DataCore has only presented evidence that Scale's product, HyperCore, has the capability to exceed.[2] D.I. 164 at 19.

The Court finds that there is a genuine dispute of material fact regarding whether HyperCore infringes claims 1 and 2 of the '235 patent. Scale does not dispute that its HyperCore systems are capable of being overcommitted. *Id.* at 18. And DataCore argues, *inter alia*, that Scale "makes and distributes YouTube videos that explain—step by step—exactly how a user can implement the infringing functionality into the user's Scale system." D.I. 197 at 35. For example, Dr. Alexander, DataCore's expert, explained that a Youtube video titled "Scale Computing |

---

[2] The Court's standing order required the parties to rank their summary judgement motions, and explained that "barring exceptional reasons determined *sua sponte* by the Court, the Court will not review any lower ranked summary judgment motions filed by the party" after denying a higher-ranked motion. D.I. 31 at 11. The Court agrees that, under the circumstances of this case, good cause exists to consider Scale's Motion For Summary Judgment No. 2 because, *inter alia*, the Court deferred the claim construction of "intentionally exceeds" to the motion dispositive stage and Scale's Motion For Summary Judgment No. 2 is dependent on the Court's construction of that term.

SC//Platform - Deduplication and Enhanced Storage Details" shows a provisioned view of a

HyperCore system that demonstrates the system operating in an over-provisioned state:

*Example 3 - YouTube - Scale Computing | SC//Platform - Deduplication and Enhanced Storage – 53.17 TB Provisioned Virtual Volume Total Exceeds Assigned Physical Storage*



Scale Computing | SC//Platform - Deduplication and Enhanced Storage Details, DC00003817 (YouTube) available at
https://www.youtube.com/watch?v=Ox7xCIlKi3E&list=PLzgU7BYlU4k2Dhl-nrItFbaHKTsLA69fV&index=11.

*Id.*, Ex. A, at ¶¶121-22. DataCore also argues that Scale performs claim 1 of the '235

patent during live product demonstrations and when developing and testing the accused

products during product development and quality testing. *See, e.g.*, *id.* at ¶¶58, 67-69.

At the hearing on Scale's motion for summary judgment, Scale argued that it

provides a warning when customers operate its products in an overcommitted state. Scale

explained that it warns its customers to buy more memory when their systems are

overcommitted "because [Scale] do[esn't] want a system to break down when someone configures it." Tr. at 44:13-44:20. Accordingly, Scale argued, the evidence indicates that Scale does not intend for its customers to use its products in an overcommitted state. *See, e.g.*, Tr. at 44:21-44-24. In response, DataCore argued that Scale's failure to warn its customers that they should not *use* their system in an overcommitted state prior to acquiring more memory is evidence that Scale intends for them to do so. Tr. at 71:25-72:7 ("Scale is not warning its users not to operate in a over-committed mode. They are engaging them to. They are warning them when they might be using an over-committed mode to such a degree that they are going to run out of physical storage.").

On balance, the Court finds that there is a genuine dispute of material fact with respect to whether Scale designed HyperCore to be operated in an overcommitted state. Drawing all reasonable inferences in DataCore's favor, a reasonable juror could find that Scale shows its customers how to configure their HyperCore systems in an overcommitted state, configures HyperCore systems in an overcommitted state while marketing those systems, and tests those systems to ensure that they are functional while overcommitted. *See, e.g.*, D.I. 167 at Ex. A, ¶¶58, 67-69, 121-22. Based on those findings, a reasonable juror could conclude that Scale encourages its customers to operate their systems in an overcommitted state (thus providing circumstantial evidence that Scale's designers intended for those systems to be operated in an overcommitted state).

Accordingly, the Court denies Scale's Motion for Summary Judgment No. 2.

**III.    CONCLUSION**

For the foregoing reasons, this 21th day of June, 2024, **IT IS HEREBY ORDERED** that:

1.    Scale's Motion for Summary Judgment No. 1 is **DENIED**.  D.I.  158.  "Intentionally exceeds" is construed as "Not indefinite.  Designed with the intent to exceed.  'Intentionally exceeds' requires more than the capability of being able to handle 'potential happenstance of over-commitment' of resources."   The Court will issue a separate Order with its construction.

2.    Scale's Motion for Summary Judgment No. 2 is **DENIED**.  D.I. 159.

3.    Pursuant to the Scheduling Order, Scale's Motion for Summary Judgment No. 3 is **DENIED.** D.I. 31 at 11.