IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DATACORE SOFTWARE CORPORATION,

    Plaintiff,

    v.

SCALE COMPUTING, INC.,

    Defendant.

Civil Action No. 22-535-GBW

---

## MEMORANDUM ORDER

Before the Court is the supplemental claim construction of two terms of U.S. Patent No. 9,344,235 (the "'235 patent"). The parties initially disputed the presentation of testimony relating to "defining a storage pool" and "client device" in the briefing relating to DataCore's motion *in limine* #1. D.I. 250, Ex. 17, Plaintiff's MIL #1, at 1-3. The Court found that the parties had presented a dispute as to the scope of "storage pool" and "client device," thus requiring the Court to construe the terms. D.I. 256 (citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). The Court has reviewed the parties' supplemental briefing (D.I. 260; D.I. 261; D.I. 267; D.I. 268) and construes the disputed terms as follows:

| Claim Term | DataCore's Construction | Scale's Construction | Court's Construction |
|---|---|---|---|
| "Defining a storage pool to which one or more physical storage devices is assigned" | The storage pool need not be defined before any physical storage is associated with it | The storage pool must be defined before any physical storage is associated with it | The storage pool must be defined before any physical storage is associated with it |
| "Client device" | "Physical or virtual device" | "Hardware device, such as a computer, connected to a network" | "Physical or virtual device" |

1. **"Defining a "Storage Pool" Occurs Before Assigning Physical Storage Devices**

At issue is a limitation found in each independent claim of the '235 Patent, which asserts in relevant part "defining a storage pool to which one or more physical storage devices is assigned by selection from a plurality of available physical storage devices." '235 Patent, Claims 1-3.  Scale argues that the plain meaning of the claim language requires that a "storage pool" is defined before any "physical storage devices" are assigned to it.  D.I. 261 at 1.  DataCore disputes this construction and maintains that the claim element does not require or suggest a sequence of any kind.  D.I. 260 at 1.  For the following reasons, the Court finds that the claim language imposes a sequential requirement under which the storage pool must be defined ***before*** physical storage devices are assigned to it.

"[T]he sequential nature of the claim steps is apparent from the plain meaning of the claim language and nothing in the written description suggests otherwise." *Mantech Envt'l Corp. v. Hudson Envt'l Servs., Inc.,* 152 F.3d 1368, 1376 (Fed. Cir. 1998).  That is, a skilled artisan reviewing the patent would understand that the claim language involves two steps: (1) the "defining" step in which the "storage pool" is created and its properties are defined; and (2) the "assigning" step in which storage devices are assigned to the aforementioned "storage pool."  The phrase "to which" sits between each step and defines the relationship between the two by providing where the "physical storage pools" are to be assigned.  *See* D.I. 76 (explaining that the term "assigned" similarly "define[s] the relationship between 'the storage pool' and the 'physical storage devices' as one where the 'physical storage devices' are assigned to 'the storage pool.'").  As Scale contends, the "defining" step must occur before the "assigning" step because "physical storage devices" could not logically be "assigned" to something that does not yet exist.  D.I. 261 at 1.  This was confirmed by DataCore's expert, Dr. Alexander, who testified that the plain

2

language of the claims required an "interpretation as assigning to something that already exists." D.I. 261, Ex. B at 112:24-113:21.  While DataCore argues that Dr. Alexander "was distinguishing between (1) an English-language reading of the claims and (2) what the claims require as a matter of patent law," Dr. Alexander did not testify that a person of ordinary skill would read the claim differently.  *See* D.I. 268 at 1.  Rather, he conceded that he did not "know how else you could interpret [the claim]." D.I. 261, Ex. B at 112:24-113:21.

This construction is not overcome by the specification and, indeed, the specification and figures support sequential nature of the claim language by describing the same sequence of steps. *See CyDex Pharms., Inc.*, 2020 WL 6393918, at *9 (finding that the specification supported the plain and ordinary meaning because "[t]he specification discloses that same order of steps"). Figure 1, for example, depicts the "[c]reation of the storage pool is initiated by a conventional mouse right click operation on the pools folder for any SDS," as shown in Figure 1A (below). '235 Patent, 5:13-20.  In this embodiment, the user then is prompted to a display of a "creating new pool" screen which, according to the specification, "allows entry of information such as [] storage unit size[,] . . . . names," and "additional information as desired." *Id.*  The specification explains that, "**once a storage pool has been defined**, physical disks can be added to the storage pool." *Id.* at 5:28-29 (emphasis added); *see also id.* at Fig. 1B.



DataCore argues that adopting the sequential order of Fig. 1A and 1B of the specification would improperly "import limitations from embodiments into the claims." However, the Court is not using the specification to import a limitation in violation of the plain meaning, but to support the plain meaning as confirmed by DataCore's expert. The specification consistently describes the "defining" and "assigning" steps as separate and sequential steps. *See, e.g., id.* at 2:5-17, 5:15-29, 7:1-10; D.I. 267 at 1 ("There is no teaching in the claims or specification of performing these acts any other way than by defining the storage pool before the assignment action."). The specification uses chronological conjunctions (e.g., "once," "now," "then") and relies on figures that are also labeled consecutively in the same order as the claim (i.e., "Fig. 1A" describing "defining" the storage pool, "Fig 1B" describing "assigning" storage devices, "Fig. 1C" describing defining NMCs). *Id.* at 5:15-20, 28-29, *see also id.* at 5:49-50 ("Referring now to the schematic diagram of Fig. 1C," which describes the process in which "NMCs 132a, 132b are then created based upon the storage pool"). Given that "[e]very embodiment discussed in the specification" defines the data pool before assigning storage devices, the specification confirms what follows logically from the plain and ordinary meaning of the claim term, the steps must be performed in sequence. *Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016).

4

In light of the claim language, the specification, and the extrinsic evidence, the Court adopts Scale's interpretation and holds that the step of "defining" the storage pool must precede the step of "assigning" storage devices to the earlier defined storage pool.

### 2. A "Client Device" is not Restricted to a Physical Device

The parties agree that the claim term "client device" must be given its plain and ordinary meaning. D.I. 260 at 2; D.I. 261 at 2. Scale contends that this meaning "is a hardware device, such as a computer, connected to a network." D.I. 261 at 2. DataCore, on the other hand, maintains that the plain and ordinary meaning of "client device" is a "physical or virtual device." D.I. 260 at 2-3. Having reviewed the claim language and the specification, the Court agrees with DataCore that the term "client device" is not restricted to a "physical device."

The Court's analysis of the claim term must begin with the language of the claims. *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012). A person of ordinary skill would note that the claim language uses the "physical" qualifying descriptor when differentiating "physical storage devices" from virtual storage devices, like "virtual volumes." *See, e.g.*, '235 Patent, claim 1 (defining a storage pool to which one or more **physical storage devices** is assigned by selection from a plurality of available **physical storage devices**, the assigned **physical storage devices** having a total logical size; defining **virtual Volumes** that are associated to the storage pool." (emphasis added)). Thus, a person of ordinary skill in the art would, in understanding "client devices," find it notable that the claim terms lack any qualifying descriptors. The patentee's decision not to refer to client devices as "physical" therefore "counsels against" reading a "physical" limitation into the term. *See Photonic Imaging Sols., Inc. v. Lenovo Grp. Ltd.*, No. CV 18-636 (MN), 2019 WL 4305335, at *4 (D. Del. Sept. 11, 2019) ("[T]he patentees knew how to

5

claim specific aspects of the 'logic terms' when they wanted to. They did so in some claims, and did not in others.").

There is also nothing in the specification that requires "client devices" to be limited to physical devices. While Scale notes that "the specification does not describe the client devices as virtual, logical or software structures," the inverse is also true. D.I. 261 at 3. That is, nowhere in the specification does the patentee define client devices as restricted to or synonymous with physical devices. Rather, consistent with the claims, the specification differentiates between "physical" and "virtual" properties when distinguishing between virtual volumes and the physical storage devices. *See, e.g.*, '235 Patent at 2:60-66 ("The host device does not need to necessarily be concerned with the type of physical storage devices that are actually managed by the SAN, as the SDS merely presents a virtual volume to the host device. Particularly, the host device accesses the virtual Volume for I/O operations as though, for example, it were a Fibre Channel (FC) storage device having the virtual Volume properties.").

Moreover, while Scale argues that "Figures 1A-1C and 2A-2B depict all virtual (or, software) components using dotted lines and all physical devices using solid lines," the specification explained that dotted lines would be used in depicting "[t]he storage pool" because it is "not a separate physical entity, but is a logical unit that is managed and found in the SDS." *Id.* at 4:25-33. The specification did not hold that structures depicted with solid lines *must* be physical. Thus, the specification's use of dotted lines alone does not constitute a clear disavowal of virtual devices from the claim term "client devices." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) ("To disavow claim scope, the specification must contain 'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.'" (internal citations omitted)).

The plain and ordinary meaning of "client device," read in light of the remainder of the patent, includes both physical and virtual devices.  There is no disclaimer in the specification. Accordingly, the Court construes "client device" as meaning "physical or virtual device."

Date: August 16, 2024

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE